IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

RICHARD A. TORTI, SR., as successor                                          PLAINTIFF
Trustee of the Stuart Family 1997 Trusts

v.                             No. 4:14CV00330 JLH

DEBRA HOAG; GENTRY PARTNERS
LIMITED; and JOHN HANCOCK LIFE
INSURANCE COMPANY USA                                                        DEFENDANTS

**OPINION AND ORDER**

Richard A. Torti, Sr., brings this action as successor trustee of the Stuart Family 1997 Trusts against former trustee Debra Hoag, Gentry Partners Limited, and John Hancock Life Insurance Company (U.S.A.), alleging claims of breach of fiduciary duty, negligence, deceit, and a violation of the Arkansas Deceptive Trade Practices Act.[1] The defendants have filed motions to dismiss the first amended complaint. Torti has filed a motion to strike portions of Hoag and Gentry Partners's motion to dismiss. For the reasons set forth above, John Hancock's motion to dismiss is granted, Hoag and Gentry Partners's motion to dismiss is granted in part and denied in part, and Torti's motion to strike is granted.

**I.**

On August 8, 1997, Layton P. Stuart created the Stuart Family 1997 Trusts, which consisted of separate trusts for the benefit of each of his three immediate family members.[2] Stuart was the chief executive officer of One National Bank. Michael Heald was the chief operations officer of the bank. The trusts designated Heald as trustee. Hoag, an insurance broker, negotiated Heald's

---

[1] Ark. Code Ann. § 4-88-101, *et seq.*

[2] This statement of facts is taken from the first amended complaint.

purchase, in the name of the trusts, of a $20 million life insurance policy on Stuart's life from John Hancock. That same day, the bank and the trusts entered into a split dollar life insurance agreement. In that agreement, the bank acknowledged that Stuart rendered service to the bank that was to the bank's benefit and for which Stuart was inadequately compensated. Document #14-1 at 52 ¶1. As inducement to Stuart to continue in the bank's employ, the bank entered into an agreement to finance the trusts' payment of the insurance policy's $350,000 annual premiums. Under the agreement the bank agreed to pay the policy's premiums and to be repaid from the policy's death proceeds. The agreement also provided, in pertinent part, "No loans shall be made against the cash value of the Insurance Policy, which shall remain available . . . to satisfy the amount payable to the Bank . . . ." Document #14-1 at 53 ¶6. In return, acting on the trusts' behalf, Heald assigned the policy to the bank as collateral.

On June 2, 2011, Heald resigned as trustee and appointed Hoag as the successor trustee. Hoag accepted the appointment. On June 3, 2011, Hoag submitted a policy loan request to John Hancock on behalf of the trusts. Hoag sought to borrow funds to the fullest extent possible, using the trusts' life insurance policy as collateral. Hoag was the president of Gentry Partners, and she used employees of Gentry Partners to facilitate the policy loan request. Hoag obtained a loan in the amount of $1,761,000. On June 7, 2011, John Hancock issued a check in that amount made payable to "Stuart Family Trust" and sent it to the address Hoag had submitted on the loan application, which was Stuart's office in Little Rock. Stuart received the check, endorsed it, deposited it, and thereafter used the funds contrary to the purposes of the trusts.

On March 24, 2013, Stuart died. By May 28, 2013, Torti had become the trustee. John Hancock required that Torti execute a release of all claims relating to or arising out of the policy or

the payment of benefits thereunder as a condition of its paying the death benefit under the insurance policy. Torti declined to sign the release. John Hancock transferred $17,693,837.10 into a segregated account as death benefits owing under the policy minus the $1,761,000 policy loan and accrued interest.

On June 11, 2013, the United States issued a warrant to seize the death benefit proceeds (less the loan proceeds), and it filed a civil forfeiture complaint against those proceeds.[3]

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, 127 S. Ct. at 1975, and must draw all reasonable inferences in favor of the nonmoving party. *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not

---

[3] The civil forfeiture proceeding is *United States v. $17,693,837.10 from John Hancock Life Ins. Policy No. XXX6473, et al.*, E.D. Ark. No. 4:13CV00409-BSM.

bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

### III.

**A.     Breach of Fiduciary Duty**

Torti's complaint alleges a claim against the defendants for breach of fiduciary duty. Hoag and Gentry Partners argue that the "no loans" provision in the split dollar agreement was for the benefit of the bank and not the trust so that the provision created no duty to the trust. Furthermore, they argue that a provision in the trust agreement permitted Hoag to borrow or loan money in any manner. Document 14-1 at 14 ¶E-1(c). They contend that this provision does not create a fiduciary duty under Arkansas law, which, they argue, requires that a duty and the requisite standards of that duty must be set forth.

By statute, however, a trustee has a duty to administer the trust prudently and with loyalty: *see* Ark. Code Ann. § 28-73-801 ("[T]he trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries."); *id*. § 28-73-804 ("A trustee shall administer the trust as a prudent person would, by considering the purposes, terms, distributional requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution."); *id.* § 28-73-802(a) ("A trustee shall administer the trust solely in the interests of the beneficiaries.").[4] Torti has alleged that Hoag obtained a $1.7 million loan on behalf of the trust in violation of the terms of the split dollar agreement and that she directed the funds to be delivered to Stuart's business address with the

---

[4] The first amended complaint includes citations to these and other provisions of the Arkansas Trust Code that set forth duties of a trustee. See Document #14 at 10 ¶26.

expectation that Stuart would use the funds for purposes unrelated to and inconsistent with the purposes of the trusts.  Document #14 at 8 ¶¶18, 19.  In view of the allegation that Hoag allowed trust assets to be used for purposes unrelated to and inconsistent with the Trusts' purposes, the first amended complaint states a claim for a breach of fiduciary duty against Hoag.

Torti has also alleged that Hoag's conduct should be imputed to Gentry Partners because Hoag "utilized employees" of Gentry Partners, including Jane Yoo, to facilitate the request for the loan, that the loan request proceeded "from Hoag through Gentry," and that "[t]hrough Yoo, . . . it was determined that the loan could be $1,761,000."  Document #14 at 7 ¶¶17, 18.  "Under the doctrine of *respondeat superior,* an employer may be held vicariously liable for the tortious conduct of an agent if the evidence shows that such conduct was committed within the scope of the agent's employment."  *See St. Joseph's Reg'l Health Ctr. v. Munos*, 326 Ark. 605, 612, 934 S.W.2d 192, 195 (1996); *Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, No. 09-CV-175-LRR, 2010 WL 1780760, at *5 (N.D. Iowa Apr. 29, 2010) (breach of fiduciary duty is a tort).  Torti's allegations that Hoag was the president, and therefore an agent, of Gentry Partners, that she sought the loan from John Hancock, and that she used Gentry Partners employees to facilitate the loan (which is some indication that she was acting in her capacity as President of Gentry Partners) are sufficient to state a claim for breach of fiduciary duty against Gentry Partners based on a theory of *respondeat superior*.

Torti has also alleged that Hoag's conduct should be imputed to John Hancock.  The first amended complaint alleges that "agents and employees of [John] Hancock processed the loan request from Hoag through Gentry with a speed and a lack of prudent business caution that constitutes the standard of ordinary care for business transactions of this kind and magnitude."

Document #14 at 7 ¶18.  Torti further alleges that Hoag was an agent for John Hancock and that John Hancock issued the check for $1.7 million.

John Hancock argues that there is no duty to take a prescribed number of days to process a loan, not is there any allegation that the outcome would have been different if John Hancock had taken longer.  Furthermore, John Hancock maintains that Hoag did not act as its agent when she obtained the loan and allowed Stuart to use the proceeds.

"The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control."  *Hardin v. Bishop*, 2013 Ark. 395, 430 S.W.3d 49, 54 (2013).  Torti has not alleged facts sufficient to support his claim that Hoag acted on John Hancock's behalf in obtaining the loan and allowing its proceeds to be squandered, which means that he has not alleged facts to show that Hoag was acting as an agent of John Hancock when she committed the acts about which he complains.  Hoag's conduct may not be imputed to John Hancock.  Consequently, Torti has failed to state a claim for breach of fiduciary duty against John Hancock.

**B.    Negligence**

Torti has asserted claims for negligence against the defendants.  Hoag and Gentry Partners argue that the trust agreement provides, in pertinent part, "A trustee shall not be liable for any act or omission except in the case of gross negligence, bad faith or fraud."  Document #14-1 at 13 ¶D-2(b).  They maintain that the first amended complaint fails to supply factual allegations regarding how Hoag failed to act with reasonable care or how she was the proximate cause of the trusts' damages.  "To establish a prima facie case of negligence, the plaintiff must demonstrate that the defendant breached a standard of care, that damages were sustained, and that the defendant's actions

were a proximate cause of those damages." *Neal v. Sparks Reg'l Med. Ctr.*, 2012 Ark. 328, 422 S.W.3d 116, 120 (2012). "Gross negligence is the failure to use even slight care." *Spence v. Vaught*, 236 Ark. 509, 512, 367 S.W.2d 238, 240 (1963). Here, the first amended complaint alleges that (1) Hoag had a duty to exercise reasonable care in administering the trust; (2) she breached that duty by violating the split dollar agreement between the bank and the trust when she obtained the loan against the cash value of the insurance policy and by giving Stuart access to and control of the loan proceeds; and (3) her actions in obtaining the loan proximately caused damage to the trust, constituting a loss of more than $1.7 million plus interest. These allegations are sufficient to state a claim against Hoag for negligence or gross negligence in regard to the loss of the $1.7 million plus interest.

In keeping with the agency analysis above, Hoag's conduct may be imputed to Gentry Partners, so the first amended complaint states a negligence claim against it. The negligence claim against John Hancock, however, will be dismissed because the allegations against it are not sufficient to state a claim, nor may Hoag's conduct be imputed to it.

**C.     Deceptive Trade Practices**

Torti has asserted a claim under the Arkansas Deceptive Trade Practices Act. The defendants argue that Torti cannot state a claim under that act because his allegations fall within the insurance activity exception. Generally, the ADTPA "does not apply to: * * * [a]ctions or transactions permitted under laws administered by the Insurance Commissioner . . . or other regulatory body or officer acting under statutory authority of this state or the United States . . . ." Ark. Code Ann. § 4-88-101(3). "[T]he insurance activity exception essentially includes all insurance activity in the State of Arkansas." *Williams v. State Farm Mut. Auto. Ins. Co.*, No.

5:10CV00032 JLH, 2010 WL 2573196, at *4 (E.D. Ark. June 22, 2010) (quotation and citation omitted); *see id.* (listing cases). Hoag's obtaining the life insurance policy in 1997 and the policy loan in 2011 constitute insurance activity that falls within that exception. Therefore, the first amended complaint fails to state a claim under the ADTPA as to all defendants.[5]

**D.     Deceit**

Torti's first amended complaint contains a claim against Hoag for deceit. It alleges that Hoag had a duty to disclose all material circumstances concerning the trusts and that she concealed material information regarding her meetings and discussions with Stuart regarding the policy loan.

> [T]he five elements of deceit . . . are:
> (1) The defendant makes a false representation—ordinarily, one of fact;
> (2) The defendant knows that the representation is false or he does not have a sufficient basis of information to make it; that is, scienter;
> (3) The defendant intends to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;
> (4) The plaintiff justifiably relies upon the representation;
> (5) The plaintiff suffers damage as a result of the reliance.

*Fid. Mortgage Co. of Texas v. Cook*, 307 Ark. 496, 499-500, 821 S.W.2d 39, 42 (1991). The elements of a claim for deceit must be pled with particularity in order to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *See Humphries v. Metro. Life Ins. Co.*, No. 4:12-CV-00203-BRW, 2012 WL 3555305, at *3 (E.D. Ark. Aug. 16, 2012). Torti's allegations fall short of pleading this claim with particularity, so he has failed to state a claim for deceit against all defendants.

---

[5] Even apart from the safe harbor provision of section 4-88-101(3), the first amended complaint fails to state a claim under the ADTPA.

**E.     Conspiracy**

The first amended complaint does not set forth a separate count for conspiracy, but it does contain the allegation that "[t]he facts, circumstances, and conduct set forth herein constitute a conspiracy by and among the Defendants, as an agreement to accomplish a purpose that was unlawful and oppressive, or to accomplish, by unlawful or oppressive means, a purpose that was not in itself unlawful or oppressive." Document #14 at 13 ¶34. As the Arkansas Supreme Court has explained:

> Since a corporate entity cannot conspire with itself, a civil conspiracy is not legally possible where a corporation and its alleged coconspirators are not separate entities, but, rather, stand in either a principal-agent or employer-employee relationship with the corporation. Corporate agents may not be held liable for civil conspiracy in the absence of evidence showing that they were acting for their own personal benefit rather than for the benefit of the corporation.

*Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001) (internal citations omitted). Torti has alleged that Hoag was an agent of both Gentry Partners and of John Hancock, and he has not alleged that Hoag was acting for her own personal benefit. Furthermore, "[a]llegations of conspiracy must be pleaded with sufficient specificity and factual support to find a meeting of the minds." *Jones v. Jackson*, No. 4:11CV00216 JLH, 2011 WL 1584294, at *2 (E.D. Ark. Apr. 27, 2011). Torti has not met that requirement. Therefore, all claims of conspiracy will be dismissed.

**F.     Damages**

Hoag and Gentry argue that certain damages alleged by Torti, including the trusts' expenditure of attorney's fees and the beneficiaries' non-receipt of the death benefit, derive from the effects of the United States's civil forfeiture action. Torti has not alleged facts sufficient to show

9

that Hoag's conduct proximately caused the damages arising from the government's forfeiture action, so any claims for damages arising from that action will be dismissed.

**G.     Motion to Strike**

Torti has filed a motion to strike portions of Hoag and Gentry Partners's brief in support of their motion to dismiss in which they claim that Stuart committed suicide. Torti argues that those allegations are made with no factual basis and that Stuart's death certificate establishes that his cause of death was "hypertensive cardiovascular disease." *See* Document 30 at 1 ¶2. Hoag and Gentry Partners have not responded to Torti's motion. Torti's motion to strike will be granted.

## CONCLUSION

For the reasons explained above, John Hancock Life Insurance Company's motion to dismiss is GRANTED. Document #21. Debra Hoag and Gentry Partners's motion to dismiss is GRANTED IN PART and DENIED IN PART. Document #23. Richard Torti's motion to strike is GRANTED. Document #30. All of Richard Torti's claims against John Hancock Life Insurance Company are dismissed without prejudice. Richard Torti's claims against Debra Hoag and Gentry Partners Limited for deceit, violation of the Arkansas Deceptive Trade Practices Act, and civil conspiracy are dismissed without prejudice. Richard Torti has stated claims against Hoag and Gentry Partners for breach of fiduciary duty and negligence as regards the $1.7 million policy loan plus interest, so those claims are not dismissed.

IT IS SO ORDERED this 17th day of October, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE