## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

RICHARD A. TORTI, SR., as successor                                  PLAINTIFF
Trustee of the Stuart Family 1997 Trusts

v.                                    No. 4:14CV00330 JLH

DEBRA HOAG; GENTRY PARTNERS
LIMITED; and JOHN HANCOCK LIFE
INSURANCE COMPANY USA                                                DEFENDANTS

### OPINION AND ORDER

Richard A. Torti, Sr., brought this action as successor trustee of the Stuart Family 1997

Trusts against former trustee Debra Hoag, Gentry Partners Limited, and John Hancock Life

Insurance Company (U.S.A.), alleging claims of breach of fiduciary duty, negligence, and breach

of contract. The Court dismissed all claims against Hoag and Gentry Partners after being notified

that those parties had reached a settlement. Document #112. Torti's claims against Hancock for

negligence and breach of contract remain. Hancock has filed a motion to dismiss those claims

pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is

granted.

### I.

On August 8, 1997, Layton P. Stuart created the Stuart Family 1997 Trusts, which consisted

of separate trusts for the benefit of each of his three immediate family members. Stuart was the

chief executive officer of One National Bank. The trusts designated Michael Heald–chief operations

officer of the bank at that time–as trustee. Hoag–an insurance broker–negotiated the trust's purchase

from Hancock of a life insurance policy on the life of Stuart for $20 million. Document #73-5. The

policy called for the payment of ten annual premium payments of $350,000 each. To finance these

payments, the trust entered into a split dollar life insurance agreement with the bank. Document

#73-9.  Heald collaterally assigned the policy to the bank.  *Id.* at 1, ¶ 2.  Pursuant to the agreement, the bank promised to pay the annual premiums and the trust promised that upon the death of Stuart, the bank would be entitled to receive a portion of the proceeds equal to the sum of its payments.  *Id.* at 2, ¶¶ 3, 7.  The agreement also dictated that the policy remain unencumbered, stating that "[d]uring the term of this Agreement, the Trustee shall not transfer, assign, encumber or terminate the Insurance Policy.  No loans shall be made against the cash value of the Insurance Policy, which shall remain available (subject to the provisions of the Insurance Policy) to satisfy the amount payable to the Bank . . ."  *Id.* at 2, ¶ 6.

On June 2, 2011, Heald resigned as trustee and appointed Hoag as the successor trustee.  The next day Hoag submitted a policy loan request to Hancock on behalf of the trusts.  Document #73-11.  Hoag sought to borrow funds to the fullest extent possible, using the trusts' life insurance policy as collateral.  The request form did not include the signature of the "assignee"–the bank.  Hoag obtained a loan in the amount of $1,761,000.  On June 7, 2011, Hancock issued a check in that amount made payable to "Stuart Family Trust" and sent it the address of Stuart's office in Little Rock.  Stuart received the check, endorsed it, deposited it, and proceeded to use the funds in a manner contrary to the purposes of the trusts.

Stuart died on March 24, 2013.  By May 28, 2013, Torti had become the trustee.  Hancock required that Torti execute a release of all claims relating to or arising out of the payment of benefits as a condition of Hancock paying the death benefit proceeds pursuant to the insurance policy.  Torti refused to sign the release.  Hancock transferred $17,693,837.10 into a segregated account as death benefits owed pursuant to the policy minus the $1,761,000 policy loan and accrued interest.  On

June 11, 2013, the United States issued a warrant to seize the death benefit proceeds–less the loan proceeds–and filed a civil forfeiture complaint against those proceeds.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all of the factual allegations contained in the complaint, *Twombly*, 550 U.S. at 572, 127 S. Ct. at 1975, and must draw all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. "The court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002).

### A.    Breach of Contract

Torti claims that Hancock breached its insurance contract with the Trust by making the $1,761,000 loan in violation of the split dollar agreement. Document #73 at 13, ¶¶ 32-34.

According to Torti, Hancock knew that the split dollar agreement precluded Hoag from taking out a loan against the policy but made the loan anyway. "In order to state a cause of action for breach of contract, the complaint need only assert the existence of an enforceable contract between the plaintiff and defendant, the obligation of the defendant thereunder, a violation by the defendant, and damages resulting from the breach." *Smith v. Eisen*, 97 Ark. App. 130, 139, 245 S.W.3d 160, 168-69 (2006). "A court cannot make a contract for the parties but can only construe and enforce the contract that they have made." *Found. Telecomm., Inc. v. Moe Studio, Inc.*, 16 S.W.3d 531, 538, 341 Ark. 231, 241-42 (2000).

The second amended complaint alleges the existence of an enforceable contract between the Trust and Hancock–the insurance contract. Document #73 at 5, ¶ 10. Pursuant to the contract, Hancock was obligated to pay the death benefits to the Trust upon the death of Stuart. Document #73-5 at 3. The contract also provided that the Trust could borrow money from Hancock upon the receipt of a completed form satisfactory to Hancock assigning the policy as the only security for the loan. *Id*. at 17. The second amended complaint also alleges that the Trust entered into a separate contract–to which Hancock was not a party–with One National Bank in order to finance the payment of the premiums called for under the insurance contract. Document #73 at 6, ¶13. Through this split dollar life insurance agreement, the Trust collaterally assigned the life insurance policy to the bank and the bank promised to pay the annual premiums required by the insurance contract. Document #73-9. The agreement entitled the bank to receive a portion of the death benefits equal to the sum of its annual premium payments. *Id*. at 2, ¶3. The agreement stated: "No loans shall be made against the cash value of the Insurance Policy, which shall remain available (subject to the provisions of the Insurance Policy) to satisfy the amount payable to the Bank . . ." *Id*. at 2, ¶6.

4

As for the obligation of Hancock under the insurance contract, the second amended complaint alleges:

> 14.     . . . Pursuant to the terms and conditions of the [insurance contract] in Exhibits "E-1" and "E-2," Hancock had a duty to ensure that all signatures are properly obtained on any loan request, with all proper corporate resolutions, including any assignment of the Policy, such as the Bank.
>
> * * *
>
> 32.     The forms utilized by Hancock including Form E-1, E-2, and E-3, in administering the Policy form a part of the insurance contract.
>
> 33.     Hancock was under a duty to administer the contract of insurance in a prudent manner consist[ent] with its forms and standard practices, and in good faith, as required under every contract of insurance in Arkansas.
>
> 34.     . . . Hancock was required to properly and prudently administer the Policy in accordance with its forms and procedures, to and ensure that all appropriate signatures were procured, along with all Corporate Resolutions, before processing and distributing any funds as loans against the Policy value.

Document #73.  The forms to which the second amended complaint refers are E-1–instructions on completing a request for policy loan; E-2–a blank request for policy loan form; and E-3–a checklist filled out by a Hancock employee upon the receipt of Hoag's loan request.  Document #73-6, 7, 8.

Torti essentially claims that Hancock violated its obligations under the insurance contract in two ways when it made the loan to the Trust: (1) it failed to act in good faith because it was on notice of the collateral assignment to the bank and knew that taking out a loan against the policy was a violation by Hoag of the split dollar agreement and (2) it failed to acquire the appropriate signatures and provide a corporate resolution as required by its instructions for completing a request for policy loan.  But Torti cannot base his breach of contract claims against Hancock on the violation–by the former trustee–of an agreement to which Hancock was not a party or the failure by Hancock to follow its own rules spelled out in forms that were not a part of the contract between itself and the Trust.

5

Hancock argues and the Court agrees that it was not on notice of the collateral assignment and that the forms are not part of the insurance contract.  Document #89 at 5.  The insurance contract states:

> 24.      . . . We will not be on notice of any assignment unless it is in writing, nor will be on notice until a duplicate of the original assignment has been filed in our Home Office . . . .

Document #73-5 at 22, ¶ 24.  First, while Torti does attach a letter by Hoag[1] to Heald–dated August 15, 1997–acknowledging the split-dollar agreement, Document #73-1, the second amended complaint never alleges that Hancock was notified in writing of the collateral assignment to the bank, nor that a duplicate of the original assignment was filed in Hancock's home office.  *See* Document #73.

Second, Torti has failed to allege facts giving rise to a reasonable inference that the forms were a part of the insurance contract between the Trust and Hancock.  Torti alleges that Hancock issued the forms as a part of the insurance contract, "which were required to be properly processed by Hancock under the terms of the Policy contract."  Document #73 at 5, ¶ 10.  But the insurance contract states:

> 28.      The written application for the policy is attached at issue.  The entire contract between the applicant and [Hancock] consists of the policy and such application.

Document #73-5 at 22, ¶ 28.  "If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction."  *Multi-Craft Contractors, Inc. v. Perico Ltd.*, 96 Ark. App. 133, 143, 239 S.W.3d 33, 41 (2006) (quoting *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 296, 57 S.W.3d 165, 169 (2001)).  The language of the

---

[1] Hoag was acting as an Agent/Registered Representative of Hancock at that time.

policy unambiguously dictates that the supplemental forms referred to by Torti as "E-1, E-2, and E-3" are not a part of the insurance contract.  And Couch on Insurance states:

> It is elementary that whatever is intended to be made part of a written contract of insurance should be inserted in the policy or be incorporated therein by attachment and proper words of reference so that it represents the entire final agreement of the policy . . . [S]tatements in a collateral document do not become a part of the contract of insurance unless they are referred to in a sufficiently clear manner to indicate that the parties intended to make them a part of the contract.  In the absence of such clear reference, the rights and liabilities of the parties to a contract of insurance are to be determined by the terms of the policy itself to the exclusion of other papers not made a part thereof.

1A STEVEN PITT, ET AL., COUCH ON INS. § 17:16 (3D ED. 2015).  The insurance contract makes no reference to the forms, Document #73-5, and Torti does not allege facts to indicate that the Trust and Hancock intended to make them a part of the contract.  *See* Document #73-5.  Torti only makes two conclusory allegations that Hancock issued the forms as part of the insurance contract and that the forms form a part of the insurance contract.  Document #73 at 73 at 5, 13, ¶¶ 10, 32.  Therefore, the second amended complaint fails to state a claim against Hancock for breach of contract.

## B.    Negligence

Second, Torti claims that Hancock acted negligently in its performance of the insurance contract.  Document #73 at 13, ¶ 33.  The second amended complaint alleges:

> 33.    Hancock was under a duty to administer the contract of insurance in a prudent manner consist[ent] with its forms and standard practices, and in good faith, as required under every contract of insurance in Arkansas.

> 34.    . . . In not directing the checks to the named Trustee as was its regular Policy . . . and in directing the check to an address that was not the known address of the Trustee, Hancock breached its duty to prudently administer the contract of insurance. As a direct and proximate result of Hancock's breach of duties, the $1,761,000.00 loan was wrongfully processed and approved by Hancock, and the funds were delivered directly to Layton Stuart.

*Id.* at 13, ¶¶ 33-34.  First, Arkansas law does not recognize a separate claim in tort for breach of the duty of good faith and fair dealing.  *Mountain Home Flight Serv. Inc. v. Baxter County, Ark.*, 758 F.3d 1038, 1043 (8th Cir. 2014) (citing *Ark. Research Med. Testing, LLC v. Osborne*, 2011 Ark. 158, 2011 WL 1423993, at *6 (2011)).  To the extent that Torti's negligence claim is in reality a claim for breach of the implied duty of good faith and fair dealing, it fails as a matter of law. Second, the Court need not reach the issue of whether Torti's claim for negligent performance of the contract is cognizable under Arkansas law[2] because Hancock did not have a duty to ensure that the funds reached the correct recipient.  The second amended complaint alleges:

> 23.    Despite clear terms and conditions of the Policy Contract, Hancock's knowledge of the existence of the Trusts, and that Stuart was not and had never been, the trustee, Hancock allowed the check to be paid after its personal endorsement by Stuart.

Document 73 at 10, ¶ 23.  But Hancock made the check out to the Stuart Family Trust and sent it to the address provided by Heald when the Trust purchased the policy.  Document #73-5 at 1; Document #73-13.  The check was drawn on an account at JP Morgan Chase Bank.  *Id.*  Stuart negotiated the check at One Bank & Trust, which transferred the check to JP Morgan Chase Bank for payment.  Both One National Bank and JP Morgan Chase Bank honored the check as endorsed. By transferring the check to JP Morgan Chase Bank, One National Bank warranted that all signatures on it were authentic and authorized.  Ark. Code Ann. § 4-4-207(a)(2).  Since Hancock made the check payable to the Stuart Family Trust, and since One National Bank warranted that the signatures were authentic and authorized, it had no reason to suspect that the check had not been

---

[2] Negligent performance of an insurance contract based on conduct constituting nonfeasance is not a cognizable tort under Arkansas law.  *Farm Bureau Ins. Co. of Ark., Inc. v. Running M Farms, Inc.*, 366 Ark. 480, 491, 237 S.W.3d 32, 40 (2006) (stating that "Arkansas has never recognized the tort of failure to act (nonfeasance) apart from the tort of bad faith.").

properly endorsed.  Nor does Torti allege that Hoag notified Hancock that the check had been negotiated without her endorsement.  Nothing in the sequence of events put Hancock on notice that the check may have been endorsed improperly so that it would know to verify the endorsement when the paid check was returned by JP Morgan Chase Bank with Hancock's bank statement.  Therefore, Torti's claim for negligence fails as a matter of law.[3]

## CONCLUSION

For the foregoing reasons, the motion to dismiss filed by John Hancock Life Insurance Company USA is GRANTED.  Document #88.  The complaint of Richard A. Torti, Sr., as successor Trustee of the Stuart Family 1997 Trust is dismissed with prejudice.

IT IS SO ORDERED this 26th day of February, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[3] In its reply brief, Hancock argues that Torti's negligence claims are barred by Arkansas's three-year statute of limitations, Ark. Code Ann. § 16-56-105.  As a general rule, courts do not address arguments received for the first time in a reply brief.  *Akeyo v. O'Hanlon*, 75 F.3d 370, 374 n. 2 (8th Cir. 1996); *Cunningham v. City of Benton*, No. 4:05CV 1130 JLH, 2007 WL 707343, at *4 (E.D. Ark. March 5, 2007); *see also Adams v. City of Manchester*, No. 4:11CV1309 TCM, 2012 WL 3242078, at *4 (E.D. Mo. Aug. 7, 2012) (" 'It is well settled that [the Court] do[es] not consider[ ] arguments raised for the first time in a reply brief.' " (quoting *K.C.1987 Ltd. P'ship v. Reede Mfg.*, 472 F.3d 1009, 1018 n. 2 (8th Cir. 2007))).